## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BECKLEY

**MARKEL INSURANCE COMPANY,**
**a foreign corporation,**

**Plaintiffs,**

**v.**

**JAN-CARE AMBULANCE SERVICE,**
**INC., a West Virginia Corporation,**
**JAN-CARE AMBULANCE OF**
**NICHOLAS COUNTY, INC., a West**
**Virginia Corporation, JAN-CARE**
**AMBULANCE OF RALEIGH**
**COUNTY, INC., a West Virginia**
**Corporation, and JAN-CARE**
**AMBULANCE, INC., a West Virginia**
**Corporation,**

**Defendants.**

Civil Action No. __5:21-cv-00293__

Honorable _____

## MARKEL INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW Markel Insurance Company ("MIC"), pursuant to Rule 57 of the Federal

Rules of Civil Procedure, and 28 U.S.C. §2201, which for its Complaint for Declaratory Relief states

as follows:

### Jurisdiction

1.     Markel Insurance Company is an Illinois corporation, with its principal place of

business in Glen Allen, Virginia.

2.     Jan-Care Ambulance Services, Inc. was a West Virginia Corporation and, according

to the West Virginia Secretary of State office information, was formed November 4, 1970.  Said

records show that this entity was terminated July 30, 1987, and underwent a name change that day to Jan-Care Ambulance of Nicholas County, Inc.

3.     Jan-Care Ambulance Services of Nicholas County Inc. is a West Virginia Corporation and, according to the West Virginia Secretary of State office information, was formed November 4, 1970, and remains a domestic, for profit, corporation in the State of West Virginia.  According to West Virginia Secretary of State records, this organization is classified as "6219- Health Care and Social Assistance - Ambulatory Health Care Services - Other Ambulatory Health Care Services (ambulance services, blood & organ banks)".

4.     Jan-Care Ambulance Services of Raleigh County Inc. is a West Virginia Corporation and, according to the West Virginia Secretary of State office information, was formed July 30, 1987, and remains a domestic, for profit, corporation in the State of West Virginia.  According to West Virginia Secretary of State records this organization is classified as "6219- Health Care and Social Assistance - Ambulatory Health Care Services - Other Ambulatory Health Care Services (ambulance services, blood & organ banks)".

5.     Jan-Care Ambulance, Inc. is a West Virginia Corporation and, according to the West Virginia Secretary of State office information, was formed February 24, 1989, and remains a domestic, for profit, corporation in the State of West Virginia.  According to West Virginia Secretary of State records, this organization is classified as "6219- Health Care and Social Assistance - Ambulatory Health Care Services - Other Ambulatory Health Care Services (ambulance services, blood & organ banks)".

6.     The transactions giving rise to this Complaint for Declaratory Relief occurred in

Nicholas County, West Virginia, involving residents and citizens of Raleigh County, West Virginia, and involving two civil actions pending in the Circuit Court of Raleigh County, West Virginia.

7.     This Court has venue and jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based upon complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000.00.

## Factual Background

### The Accident

8.     On August 10, 2019, Douglas Dick was operating an ambulance ("the Ambulance"), bearing Jan-Care Ambulance markings and, per the State of West Virginia Uniform Traffic Crash Report ("Accident Report"), owned by Jan-Care Ambulance Services, Inc.  Brittany L. Young was a passenger in the Ambulance.

9.     The Ambulance was a 2002 Ford Econoline Van and it was traveling south on U.S. Route 19 in the center lane.  A tractor trailer truck ("the Truck") was parked in the right truck lane due to an unknown reason.

10.     According the Accident Report, the Truck was owned by 11290339 Canada, Inc. and was being operated by Bikramjit Randhawa.  The Young Estate has filed suit against 1579901 Ontario d/b/a ASL Global Logistics ("ASL") and alleges that the driver of the Truck was an agent of ASL at the accident.

11.     The Accident Report states that the Ambulance traveled into the right lane, striking the rear of the Truck.  Both Mr. Dick and his passenger, Brittany Young sustained fatal injuries in the accident.  There was no patient in the Ambulance as it was returning to the Beckley area from a patient transport to Morgantown, West Virginia, when the accident occurred.

35035/240                                                      3

12.     The Accident Report states that Ms. Young was reportedly texting with her fiancé prior to the crash and advised him that she was unsure if she would make it home due to the driver of the Ambulance falling asleep.

13.     The Accident Report indicated that Mr. Dick failed to keep in a proper lane and failed to maintain control of the Ambulance.  Mr. Dick was noted to have violated *W. Va. Code §17C-6-1.*

14.     The Accident Report indicated that the driver of the Truck took other improper action and was parked in the street in violation of *W. Va. Code §17C-13-1.*

## The Underlying Civil Actions

**A.**     ***The Young Estate Action***

15.     On May 18, 2020, Donnie L. Young and Brandon Young, Co-Administrators of the Estate of Brittany L. Young (hereinafter the "Young Estate") filed their original Complaint in the Circuit Court of Raleigh County, West Virginia, in Civil Action 20-C-193-P.

16.     On October 30, 2020, the Young Estate filed *Plaintiffs' Second Amended Complaint And More definite Statement of Facts.* Under Raleigh County's e-filing system, the Civil Action No. is now identified as CC-41-2020-C-193.  This pleading sets forth the current allegations made against the Defendants in the action and it will be referred to, for the purposes of this action, as the "Young Case."[1]  (A full and Complete copy of *Plaintiffs' Second Amended Complaint And More definite Statement of Facts* is attached as **Exhibit A**).  In the *Young* case, Jan-Care Ambulance of Raleigh County, Inc. is being defended by counsel retained by the Workers Compensation /Employer's Liability carrier for Employers' Innovative Network, LLC ("EIN"), while Jan-Care

---

[1]  Reference to the "Young Complaint" shall mean and refer *Plaintiffs' Second Amended Complaint And More definite Statement of Facts* filed in the Young Case and reference to numbers shall mean and refer to paragraph numbers set forth in the "Young Complaint".

Ambulance Services, Inc. and Jan-Care Ambulance Inc. are being defended by counsel retained by MIC under the Business Auto Policy discussed below.

17.     The Young Estate alleges that EIN is a licensed Professional Employer Organization that provides personnel to companies and that EIN provided numerous personnel to various Jan-Care Corporations, such that each Jan-Care corporation is alleged to have had an independent relationship with EIN through separate contractual agreements. (*Young* Complaint, at ¶2).

18.     The Young Estate alleges that, at all relevant times, Defendant EIN was the employer of Brittany L. Young. (*Young* Complaint, at ¶2).

19.     The Young Estate alleges that Jan-Care Ambulance of Raleigh County, Inc. ("Jan-Care Raleigh") is a West Virginia corporation with its principal place of business in Beckley, Raleigh County, West Virginia, and is regulated by the West Virginia Office of Emergency Medical Services (WVOEMS) to perform care and transport for sick and injured individuals throughout the State.  It is alleged, upon information and belief, that Jan-Care Raleigh, and it alone, was Brittany Young's special employer pursuant to the borrowed servant doctrine under West Virginia Law. (*Young* Complaint, at ¶3).

20.     The Young Estate asserts that Jan-Care Ambulance Services, Inc. ("Jan-Care Services") is, or was, a West Virginia Corporation with its principal place of business in Oak Hill, Fayette County, West Virginia, and that Jan-Care Services still holds out to the general public as being an ongoing corporate entity and holds, or has held, licenses and/or certificates through the WVOEMS.  (*Young* Complaint, at ¶4).

21.     The Young Estate alleges that Jan-Care Services is registered to provide, and provides, training, education, dispatching and safety services to all entities under the Jan-Care

umbrella of companies, including but not limited to, the standards observed by the borrowed employees of other Jan-Care entities, including Jan-Care Raleigh. (*Young* Complaint, at ¶4).

22.     The Young Estate alleges that the Jan-Care Services is believed to have been the owner and/or insurer of the Ambulance involved in the accident giving rise to the *Young* case. (*Young* Complaint, at ¶4).

23.     The Young Estate alleges that, at the time of the events giving rise to the accident, Brittany L. Young was not acting as an employee (whether borrowed or otherwise) of Jan-Care Services and was not performing the work of Jan-Care Services. (*Young* Complaint, at ¶4).

24.     The Young Estate alleges that Jan-Care, Inc. is a West Virginia Corporation with its principal place of business in Beckley, Raleigh County, West Virginia, is regulated by WVOEMS, and it has assumed the duty to provide, and does provide training, education, dispatching and other services to all entities under the Jan-Care umbrella of companies, including but not limited to, the standards observed by the borrowed employees of other Jan-Care entities, including Jan-Care Raleigh, and is paid for the services it provides to various corporations such as Jan-Care Raleigh. (*Young* Complaint, at ¶5)

25.     The Young Estate alleges that Jan-Care, Inc. owns and/or insures certain of the fleet of ambulances operated under the Jan-Care umbrella of companies, that it does not provide emergency transport for the sick or injured and that the time of the events giving rise to the *Young* case, and that Brittany Young was not acting as an employee (whether borrowed or otherwise) of Jan-Care, Inc. and was not performing the work of Jan-Care, Inc. (*Young* Complaint, at ¶5).

26.     The Young Estate contends that Brittany L. Young was employed by EIN and leased to work to Jan-Care Raleigh as an Emergency Medical Technician and that dispatch of the

ambulance Ms. Young would work on was frequently completed by Jan-Care, Inc. and also routinely by Raleigh County 911 (*Young* Complaint, at ¶¶8 and 9).

27.     The Young Estate alleges that employees of EIN were leased or borrowed by Jan-Care Services and Jan-Care, Inc. and the transactions were all pursuant to separate contractual agreements between those entities and EIN.  It is asserted that no employer-employee relationship or co-employee relationship existed between Ms. Young and Jan-Care Services or Jan-Care, Inc. and that, at the time of the accident, Ms. Young was performing work for Jan-Care Raleigh and not the work of Jan-Care Services or Jan-Care, Inc. as she was not performing training, dispatching, administration or management. (*Young* Complaint, at ¶9).

28.     The Young Estate alleges that the Jan-Care companies providing care and transport of the sick and injured are set up and incorporated as separate legal entities within the State of West Virginia with more than 10 separate entities incorporated and named based upon geographic region. It is asserted that employees of Jan-Care Services/Jan-Care, Inc. do not regularly perform work in the field, but perform office-type work, whereas employees of the geographically-named corporations work in the field and provide care and transport to the sick and injured. Jan-Care Raleigh is alleged to be a separate and distinct revenue generating corporation.  (*Young* Complaint, at ¶10).

29.     The Young Estate alleges that Jan-Care, Inc. and/or Jan-Care Services are separate legal entities which employ administrative staff and are non-revenue generating corporations paid by entities such as Jan-Care Raleigh for managerial services and other services they provide.  Neither Jan-Care, Inc nor Jan-Care Services pay workers compensation or employees of Jan-Care Raleigh. (*Young* Complaint, at ¶14).

30. The Young Estate makes numerous allegations regarding work hours, work shift, hours worked, work conditions, driver fatigue, culture of fear and reprisal, intimidation of employees afraid to advise if they are tired, drivers forced to take calls when tired, failure to develop and implement a Fatigue Risk Management Plan and conduct fatigue assessment of employees and provide fatigue training to employees. (*Young* Complaint, at ¶13-21).

31. The Young Estate alleges that Ms. Young went on shift on August 9, 2019 at 7:30 p.m., for a scheduled 12-hour shift, not having a driver, a driver being called to work with Ms. Young for the accident trip.  The Young Estate has alleged that requests for a relief driver and for after-patient delivery permission to shut down their truck and sleep before making the return trip from Morgantown to Beckley were made, but the requests were refused.  (*Young* Complaint, ¶22-25).

32. Count I of the *Young* Complaint asserts claims for Deliberate Intent against EIN and Jane Care-Raleigh under *W. Va. Code §23-4-2(d)(2)(B)*.  (*Young* Complaint, ¶29).

33. The Count I allegations are made based on Jan-Care Raleigh being an employer and Ms. Young being an employee of Jan-Care Raleigh.

34. Count II of the Young Complaint is titled *Negligence Jan-Care Service and Jan-Care, Inc.*  It is asserted that Ms. Young was not an employee of either entity such that they would not be entitled to workers compensation immunity provided by *W. Va. Code §23-2-6*.

35. The allegations in Count II against Jan-Care Services and/or Jan-Care Inc. are that it/they assumed the role of dispatching, training, educating and developing the safety policies and procedures to be adhered to by employees of all entities under the Jan-Care umbrella of companies and that those services were provided to Jan-Care Raleigh at a cost paid by Jan-Care Raleigh from

its funds. It is alleged that the payments made for services included safety oversight and as such Jan-Care Inc. and/or Jan-Care Services had and assumed a duty to provide employees of Jan-Care Raleigh with a safe working environment consistent with industry standards by maintaining policies and procedures related to dispatch, training and education which pertained to, and accounted for driver fatigue. (*Young* Complaint, at ¶33)

36.     It is alleged by the Young Estate in Count II that Jan-Care Services and/or Jan-Care, Inc. had knowledge of prior instances of driver fatigue causing injury or death and that they failed to design, implement and follow a safe and effective fleet management and fatigue management plans in order to reduce and safeguard against driver fatigue and ignored complaints and issues raised regarding driver fatigue. (*Young* Complaint, at ¶33).

37.     Paragraph 34 of Count II of the *Young* Complaint alleges that Jan-Care Inc and/or Jan-Care Services negligently, recklessly, willfully, and with wanton disregard of work safety, breached its assumed duties owed to Ms. Young as an employee of Jan-Care Raleigh through, but not limited to:

- Failing to implement policies or procedures designed to ensure that ambulance operators are competent to operate the vehicles and trained on driver fatigue and how to manage and combat fatigue;

- Failing to implement policies or procedures permitting employees a reasonable rest period upon determination by those employees or their fellow team members that they are unfit or unsafe to continue duty;

- Dispatching ambulances on long trips without regard for the condition of the driver or staff of the ambulances or the number of hours worked beforehand, specially ignoring complaints made by drivers; and,

- Utilizing its role within the Jan-Care umbrella of companies to threaten and/or retaliate against employees of other Jan-Care entities who turned down dispatches due to fatigue, including facilitating suspension or termination of employment, thus

forcing employees of other Jan-Care entities to accept long trips despite having safety concerns therefor.

- Failing to coordinate with Lieutenants, Captains and the Assistant Chief from Jan-Care Raleigh in relation to issues directly raised by or affected Jan-Care Raleigh employees as it relates to driver fatigue. (*Young* Complaint, at ¶34).

38.    In Count II, the Young Estate alleges that as a direct and proximate result of the Jan-Care, Inc. and Jan-Care Services' actions and omission on or before August 10, 2019, Plaintiff's decedent suffered pain and suffering, including mental anguish, past and future lost income and earing capacity, past and future services, protection, care and assistance and loss of society, companionship and consortium and other damages. (*Young* Complaint, at ¶35).

39.    Count III of the *Young* Complaint is titled "*Negligent Entrustment - Jan-Care Inc. And Jan-Care Service* and states that, upon information and belief, the Ambulance involved in the incident was owned by Jan-Care, Inc or Jan-Care Services.

40.    It is alleged in Count III that Jan-Care, Inc or Jan-Care Services, prior to August 10, 2019 entrusted the subject Ambulance to Jan-Care Raleigh by giving it permission and authority to operate the Ambulance, despite the fact that Jan-Care Raleigh had employed multiple drivers who in the past had fallen asleep at the wheel and were unfit to drive, resulting in numerous prior motor vehicle accidents with at least one resulting in a fatality. (*Young* Complaint, at ¶39).

41.    The *Young* Complaint alleges in Count III that neither Jan-Care, Inc. or Jan-Care Services, to whom it entrusted use and operation of the subject ambulance, that Jan-Care Raleigh did anything to ensure that Jan-Care Raleigh did anything to determine driver fitness or fatigue prior to directing Jan-Care Raleigh employees to operate the Ambulance owned by Jan-Care, Inc. or Jan-Care Services. (*Young* Complaint, at ¶40).

42.     Assertions are made in the *Young* Complaint, Count III, that by entrusting the Ambulance to Jan-Care Raleigh that Jan-Care, Inc. and Jan-Care Services acted negligently, recklessly, will fully, and with wanton disregard of safety, breached their assumed duties insofar as they knew, or should have known, that Jan-Care Raleigh was incompetent, inexperienced and/or reckless in the operation of motor vehicles, including the subject Ambulance and that on August 10, 2019 the Jan-Care Raleigh entrusted with the subject Ambulance fell asleep at the wheel and crashed into the rear of a parked tractor trailer. (*Young* Complaint, at ¶41).

43.     In Count III, the *Young* Complaint alleges that as a direct and proximate result of Jan-Care Inc. or Jan-Care Services' action and omissions, on or before August 10, 2019, Plaintiffs experienced (1) pain and suffering, including mental anguish; (2) past and future lost income and earning capacity; (3) past and future lost services, protection care and assistance; (4) loss of society, companionship, and consortium; and (5) other damages.  (*Young* Complaint, at ¶42).

44.     The *Young* Complaint alleges that the Estate is entitled to recover punitive damages against Jan-Care, Inc. and Jan-Care Services for the allegations made against them in Counts II and III by asserting that the two entities had a conscious, reckless and outrageous indifference to the health, safety and welfare of employees of other Jan-Care entities, including Jan-Care Raleigh relating to the allegations made in Counts II and III.  (*Young* Complaint, at ¶¶60-62).

45.     The Young Estate concludes its Second Amended Complaint with its *ad damnum* paragraph and seeks a judgment against all Defendants, inclusive of the Jan-Care entities named being Jan-Care Ambulance of Raleigh County, Inc., Jan-Care Ambulance Services, Inc and Jan-care Ambulance, Inc. for Compensatory damages to be determined by a jury according to West Virginia law; punitive damages to be determined by a jury according to West Virginia law; costs and attorney

fees, pre-judgement interest and post-judgment interest. (*Young* Complaint WHEREFORE paragraph.)

**B.**     ***The Dick Estate Action***

46.     The Dick Estate filed a Complaint on January 20, 2021 in the Circuit Court of Raleigh County bearing Civil Action No. CC-41-2021-C-18 against Jan-Care Ambulance of Raleigh County, Inc., Jan-Care Ambulance of Nicholas County Inc. and Jan-Care Ambulance Inc. (A complete copy of the civil action filed by the Dick Estate is attached as **Exhibit B).**   In this action Jan-Care Ambulance of Raleigh County, Inc. is being defended by counsel retained by the Workers Compensation/Employer's Liability carrier for EIN and  Jan-Care Ambulance of Nicholas County Inc. and Jan-Care Ambulance Inc. are being defended by counsel retained by MIC under the Business Auto Policy discussed below.

47.     While the allegations of the Dick Estate mirror the allegations of the Young Estate as set forth above, the *Dick* Complaint named Jan-Care Ambulance of Nicholas County, Inc. as a Defendant. However as noted above, Jan-Care Ambulance Service Inc. underwent a name  change to Jan-Care Ambulance of Nicholas County, Inc.

48.     The Dick Estate alleges that Douglas Dick was an EMT leased to work for Jan-Care Raleigh and was an employee of both EIN and Jan-Care Raleigh, stating that Douglas Dick was not an employee of Jan-Care Nicholas or Jan-Care, Inc. (*Dick* Complaint, at ¶¶11, 12 and 13).

49.     The Dick Estate alleges that Douglas Dick was dispatched upon determination of Jan-Care, Inc. and that he was leased or borrowed by Defendants Jan-Care Nicholas and Jan-Care Inc. pursuant to separate contractual agreements between EIN and Jan-Care Nicholas or Jan-Care, Inc. (*Dick* Complaint, at ¶¶14 and 15).

50.     The Dick Estate alleges that there was no employer-employee relationship or co-employee relationship between Douglas Dick and Jan-Care Nicholas or Jan-Care Inc. and its agents or employees, whether leased, borrowed or otherwise. (*Dick* Complaint, at ¶16).

51.     The Dick Estate alleges that Jan-Care incorporated ten (10) separate legal entities for patient care and transport based on the geographical region where their separate headquarters were located and that each entity had managerial employees at each separate headquarters responsible for overseeing the work and work practices of the individual companies there were assigned to. (*Dick* Complaint, at ¶¶17 and 18).

52.     The Dick Estate makes allegations relating to companies under the Jan-Care umbrella relating to work shifts length that creates or allows for driver fatigue whereby drivers are required to operate ambulances on public highways despite being fatigued, drowsy and unable to safely maintain control of a motor vehicle and such drivers were dispatched by Jan-Care Nicholas and/or Jan-Care Inc. (*Dick* Complaint, at ¶¶19, 20 and 21).

53.     It is asserted by the Dick Estate that ambulance drivers and EMT's are required to take calls that require round trips potentially in excess of eight hours, regardless of time of day or hours already worked and if an employee refuses to take a call because of fatigue they will be suspended or terminated.  (*Dick* Complaint, at ¶¶22 and 23).

54.     The Dick Estate alleges that there had been other injuries or deaths of employees of Jan-Care entities resulting from duty-time fatigue but Jan-Care Nicholas continued to dispatch, and Jan-Care Raleigh continued to authorize and provide fatigued drivers without regard for the safety of their employees. (*Dick* Complaint, at ¶¶26 and 27).

55.     In Paragraphs 29 through 40 the Dick Estate makes assertions relating to the accident involved in this matter as set out above in the Factual Background - The Accident section of this Complaint. (*Dick* Complaint, ¶¶29 through 40).

56.     Count I of the *Dick* Complaint is the same as Count I of the *Young* Complaint and alleges *Deliberate Intent - EIN and Jan-Care Raleigh* in violation of *W. Va. Code §23-4-2(d)(2)(B)*. (*Dick* Complaint, ¶¶46 (I) through (v)).

57.     The Dick Estate alleges that as a direct and proximate result of EIN and Jan-Care Raleigh's action and omissions on and prior to August 10, 2019, Mr. Dick suffered death, and prior thereto, he suffered pain, fear, anguish and suffering and his statutory beneficiaries suffered sorrow, mental anguish, solace, loss of society, companionship, comfort, guidance, kindly offices an advice, expected loss of income and earning capacity, loss of services, protection care and assistance, reasonable funeral expenses and other expenses resulting from Mr. Dick's death. (*Dick* Complaint, ¶¶48 (a)-(f)).

58.     Count II of the *Dick* Complaint is titled *Negligence - Jan-Care, Inc.,* and alleges that Jan-Care, Inc. was tasked with dispatching, training, educating and developing the safety policies and procedures to be adhered to by employees of all entities under the Jan-Care umbrella of companies, including but not limited to employees of Jan-Care Raleigh. *(Dick* Complaint, at ¶50).

59.     The Dick Estate alleges in Count II that Jan-Care, Inc. was responsible for fleet management insofar as it dispatched all Jan-Care Ambulances and as such Jan-Care, Inc. had a duty to provide employees of Jan-Care Raleigh, including Mr. Dick, with a safe working environment consistent with industry standards by maintaining policies and procedures related to dispatch,

training and education which pertained to, and accounted for, driver fatigue. (*Dick* Complaint, at ¶¶51 and 52).

60.     The Dick Estate asserts in Count II that despite having direct knowledge of numerous prior instances where driver fatigue had directly caused crashes causing serious injury or death, Jan-Care Inc. Failed to design, implement and follow a safe and effective feet management and fatigue management plans in order to reduce and safeguard against driver fatigue. (*Dick* Complaint, at ¶53).

61.     Count II also alleges, as to the Dick Estate, that Jan-Care, Inc. negligently, recklessly, willfully and with wanton disregard of work, safety, breached its assumed duties owed to Mr. Dick as an employee of Jan-Care Raleigh through, but not limited to, the following:

- Failing to manage individual work schedules to minimize duty-time fatigue;

- Failing to implement policies or procedures designed to ensure that ambulance operators are competent to operate the vehicles;

- Failing to implement policies or procedures permitting employees a reasonable rest period upon determination by those employees or their fellow team members that they are unfit or unsafe to continue duty;

- Dispatching ambulances on long trips without regard for the condition of the driver or staff of the ambulances or the number of hours worked beforehand; and

- Threatening and/or retaliating against employees who turned down dispatches due to fatigue, including via suspension or termination of employment, thus forcing current employees to accept long trips despite having safety concerns therefor. (Dick Complaint, at ¶54).

62.     The Dick Estate alleges in Count III, titled *Negligent Entrustment - Jan Care Nicholas),* that Jan-Care Nicholas was the owner of the Ambulance involved in the events giving rise to the accident and, as the owner of the Ambulance, Jan-Care Nicholas owed a duty to the general public, including Mr. Dick, to only entrust the ambulance to a competent, experienced and prudent operator. (*Dick* Complaint, at ¶¶57 and 58).

35035/240                                     15

63.     In Count III, the Dick Estate contends that Jan-Care Nicholas, entrusted the Ambulance at issue to Jan-Care Raleigh despite the fact that Jan-Care Raleigh employed multiple drivers who had, in the past, fallen asleep at the wheel and were unfit to drive and doing nothing to ensure or determine that Jan-Care Raleigh did anything to determine driver fitness or fatigue prior to directing its employees to operate ambulances entrusted to Jan-Care Raleigh. (*Dick* Complaint, at ¶¶59 and 60).

64.     The Dick Estate further alleges in Count III that by entrusting the Ambulance to Jan-Care Raleigh, Jan-Care Nicholas negligently, recklessly, will fully and with wanton disregard of safety breached its assumed duties insofar as it known, or should have known, that Jan-Care Raleigh was incompetent, inexperienced and or reckless in the operation of motor vehicles, including the subject ambulance. (*Dick* Complaint, at ¶61).

65.     The Dick Estate seeks to recover punitive damages against Jan-Care, Inc for the allegations in Count II claiming that it had a conscious, reckless and outrageous indifference to the health, safety and welfare of the employees of other Jan-Care Entities, including Jan-Care Raleigh and that it had an indifference to Mr. Dick's safety and the safety of its other employees and persons traveling upon public highways. (*Dick* Complaint, at ¶¶78 and 79).

66.     The Dick Estate seeks to recover punitive damages against Jan- Care Nicholas for the allegations in Count III claiming that it had a conscious, reckless and outrageous indifference to the health, safety and welfare of the employees of other Jan-Care Entities, including Jan-Care Raleigh and that it had an indifference to Mr. Dick's safety and the safety of its other employees and persons traveling upon public highways. It is further alleged that Jan-Care Nicholas knowingly ignored

incompetency of Jan-Care Raleigh via duty-time fatigue, despite multiple prior crashes.  (*Dick* Complaint, at ¶¶82, 83 and 84).

67.     The Dick Estate alleges in Counts IX and X of the Complaint that it seeks recover from Jan-Care, Inc. and Jan-Care Nicholas for loss of spousal consortium and loss of parental consortium.  (*Dick* Complaint, at ¶¶89 through 92).

68.     The Dick Estate concludes its Complaint with its *ad damnum* paragraph and seeks a judgment against all Defendants jointly and severally, against  inclusive of the Jan-Care entities named being Jan-Care Ambulance of Raleigh County, Inc., Jan-Care Ambulance of Nicholas County, Inc. and Jan-Care Ambulance, Inc. for compensatory damages to be determined by a jury according to West Virginia law; punitive damages to be determined by a jury according to West Virginia law; costs and attorney fees, pre-judgement interest and post-judgment interest. (*Young* Complaint, WHEREFORE paragraph.)

**The MIC Policies**

**COUNT I - THE BUSINESS AUTO POLICY**

69.     Markel Insurance Company issued Business Auto Policy Number MTA70002769-05, attached hereto as **Exhibit 1**, to Named Insured Jan-Care Ambulance Services Inc. and, as per a Named Insured Extension Schedule, the policy insures Jan-Care Ambulance of Raleigh County, Inc. and Jan-Care Ambulance of Nicholas County, Inc.[2]  This policy does not name as a Named Insured Jan-Care Ambulance, Inc.[3]

---

[2] Jan Care Ambulance Services, Inc.  was terminated July 30, 1987 and the reason for termination was a name change to Jan-Care Ambulance of Nicholas County, Inc. As per the official records at the West Virginia Secretary of State's office.

[3] Jan-Care Ambulance Inc. does exist according to the official records as the West Virginia Secretary of State's office.  Those records show its effective date to be February 24,

70.     Coverage under the Business Auto Policy to the insured entities is subject to the terms, conditions, provisions and exclusions as set forth in the policy.  Said policy provides auto liability coverage of $1,000,000.00 under symbols 2 (Owned "Autos Only"), 8 (Hired "Autos" Only) and 9 (Non-owned "Autos"Only).

71.     The Business Auto Policy contains a liability deductible of $25,000.00 per claim and $200,000.00 aggregate.

72.     Relevant sections of the Business Auto Policy provide as follows:

**SECTION II - COVERED AUTOS LIABILITY COVERAGE**
**A.      Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
* * *
We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense."

We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1.      Who Is An Insured**
The following are "insureds":
**a.**      You for any covered "auto".
**b.**      Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
* * *
**(2)**      Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

---

1989 and there have been no name changes associated with this entity.

      **c.**     Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

           * * *

73.    Exclusions in the Business Auto Policy that are relevant provide:

**B.**    **Exclusions**

      This insurance does not apply to any of the following:

           * * *

**4.**    **Employee Indemnification And Employer's Liability**

      "Bodily injury" to:

**a.**    An "employee" of the "insured" arising out of an in the course of:

      **(1)**    Employment by the "insured"; or

      **(2)**    Performing the duties related to the conduct of the "insured's" business;

           * * *

      This exclusion applies:

      **(1)**    Whether the "insured" may be liable as an employer or in any other capacity; and

      **(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

           * * *

**C.**    **Limit Of Insurance**

      Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

           * * *

**5.**    **Other Insurance**

**a.**    For any covered "auto" you own, this Coverage Form provides primary insurance.

           * * *

74.     The Definitions section of the Business Auto Policy provides the following, which

is not an exclusive listing:

### SECTION V – DEFINITIONS

A.     "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B.     "Auto" means:
1.     A land motor vehicle, "trailer" or semitrailer designed for travel on public roads;
\* \* \*
C.     "Bodily injury" means:
1.     Bodily injury, sickness or disease sustained by a person, including mental anguish or emotional distress resulting from any of these; and
2.     Death resulting from bodily injury, sickness or disease.
(As per Medical Transport Enhancement Endorsement that replaced this definition in its entirety)
\* \* \*
F.     "Employee" includes a "leased worker".  "Employee" does not include a temporary worker".

G.     "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage.  Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.
\* \* \*
I.     "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker".

\* \* \*
N.     "Suit" means a civil proceeding in which:
1.     Damages because of "bodily injury" or "property damage"; or
2.     To which this insurance applies, are alleged.

* * *

75.   The Business Auto Policy contains the following Endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE**

**READ IT CAREFULLY**.

**DEDUCTIBLE LIABILITY COVERAGE**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:** Jan-Care Ambulance Service, Inc.
**Endorsement Effective Date:** 02/21/2019

**SCHEDULE**

Covered Autos Liability Coverage and Paragraph **A.**  Bodily Injury And Property Damage Liability of Section **II** – General Liability Coverages in the Auto Dealers Coverage Form are subject to one of the following two deductibles shown below:

| Liability Deductible: | $25,000 | Per "Accident" |
|---|---|---|

**C.      Our Right To Reimbursement**
To settle any claim or "suit", we will pay all or any part of any deductible shown in the Schedule.  You must reimburse us for the deductible or the part of the deductible we paid.

* * *

76.   Jan-Care Raleigh was the employer, co-employer, dual-employer, special employer and/or leasing employer of Brittany Young and Douglas Dick at the time of the accident in question.

77.   Jan-Care Raleigh is named as a Defendant in both the Young Case and the Dick Case.

78.   There is no coverage under the Business Auto policy for Jan-Care Raleigh based

21

on Exclusion B.4 which provides as follows:

**4.      Employee Indemnification And
Employer's Liability**

"Bodily injury" to:

**a.**      An "employee" of the "insured"
arising out of an in the course of:
**(1)**      Employment by the
"insured"; or
**(2)**      Performing the duties related
to the conduct of the
"insured's" business;

\* \* \*

This exclusion applies:
**(1)**      Whether the "insured" may be
liable as an employer or in any
other capacity; and
**(2)**      To any obligation to share
damages with or repay
someone else who must pay
damages because of the injury

79.      To the extent that Brittany Young and Douglas Dick are also employees of Jan-Care

Ambulance Service, Inc., Jan Care Ambulance, Inc. and/or Jan-Care of Nicholas County, Inc.

Exclusion B.4 would also apply to them and there would be no coverage under the Business Auto

Policy for them.

80.      There are allegations made in both the Young Case and Dick Case relating to Jan-

Care Ambulance Service, Inc., Jan Care Ambulance, Inc. and/or Jan-Care of Nicholas County, Inc.

that relate to dispatching, training, educating developing safety plans and procedures, failing to

develop/design/provide fleet management and driver fatigue plans, training on driver fatigue

programs, creating a culture of fear and intimidation and/or creating a hostile work environment

which do not result from the ownership, maintenance or use of a covered "auto" but are instead employment practices not covered under the Business Auto policy.

### COUNT II - COMMERCIAL GENERAL LIABILITY COVERAGE

81.     Markel Insurance Company issued Commercial General Liability Policy Number MTK70002769-05, attached hereto as **Exhibit 2**, with Named Insured Jan-Care Ambulance Services Inc. and, as per a Named Insured Extension Schedule, the policy insures Jan-Care Ambulance of Raleigh County, Inc and Jan-Care Ambulance of Nicholas County, Inc.  Said policy does not name as a Named Insured Jan-Care Ambulance, Inc.

82.     Coverage under the Commercial General Liability Policy to the insured entities is subject to the terms, conditions, provisions and exclusions as set forth in the policy.  Said policy provides an Each Occurrence limit of $1,000,000.00.

83.     The Commercial General Liability Policy provides, in part as follows:

> \* \* \*
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.
>
> \* \* \*
>
> The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.
>
> \* \* \*

84.  "Section I -Coverages" of the Commercial General Liability Policy provides as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1.      Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)      The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2)      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)      The "bodily injury" or "property damage" occurs during the policy period;

* * *

85.      "Section I - Bodily Injury and Property Damage Liability" of the Commercial General

Liability Policy contains the following Exclusions:

2.      **Exclusions**

This insurance does not apply to:

* * *

e.      **Employer's Liability**

"Bodily injury" to:

**(1)**      An "employee" of the insured arising out of and in the course of:

    **(a)**      Employment by the insured;

    **(b)**      Performing duties related to the conduct of the insured's business;

* * *

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

* * *

g.      **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

* * *

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

\* \* \*

86.     The Commercial General Liability Policy provides the following relating to Who

Is An insured:

### SECTION II – WHO IS AN INSURED

**1.**     If you are designated in the Declarations as:

\* \* \*

**d.**     An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

**2.**     Each of the following is also an insured:

**a.**     ...your "employees," ...but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" are insureds for:

**(1)**     "Bodily injury"...:

**(a)**     ...to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business...

\* \* \*

87.     The Commercial General Liability Policy provides as follows as it relates to

Limits of Insurance, Other Insurance and Separation of Insureds:

### SECTION III – LIMITS OF INSURANCE

**1.**     The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.**     Insureds;

**b.**     Claims made or "suits" brought; or

**c.**     Persons or organizations making claims or bringing "suits".

\* \* \*

4.      **Other Insurance**
If the other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a.      **Primary Insurance**
This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

b.      **Excess Insurance**
**(1)**      This insurance is excess over:
**(a)**      Any of the insurance, whether primary, excess, contingent or on any other basis:

* * *

**(iv)**      If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)**      Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)**      When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this limit, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

\* \* \*

**7.** **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

\* \* \*

28

88.     The Commercial General Liability Policy provides as follows in the Definitions section of the policy:

### SECTION V – DEFINITIONS

\* \* \*

2.      "Auto" means:
    a.      A land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

\* \* \*

3.      "Bodily injury" means:

    a.      Bodily injury, sickness or disease sustained by a person, including mental anguish or emotional distress resulting from any of these; and
    b.      Death resulting from bodily injury, sickness or disease.

\* \* \*

5.      "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\* \* \*

10.     "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\* \* \*

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

18.     "Suit" means a civil proceeding in which damages because of "bodily injury", ...to which this insurance applies are alleged.

\* \* \*

19.    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

\* \* \*

89.    The Commercial General Liability Policy contains the following Endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**EXCLUSION – DESIGNATED PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Professional Services |
| --- |
| a.  Providing ambulance or medical transportation services;<br>b.  Services of emergency medical or surgical supplies or appliances;<br>c.  Handling of patients:<br> (1) From the place where they are acceptance for movement into or onto the means of transport;<br> (2) During transport;<br> (3) From the means of transport to the place where they are finally delivered;<br>d.  Dispatching of personnel to provide any of the above services; or<br>e.  Establishing medical protocol; creating medical training curriculum, providing medical training, conducting medical quality assurance programs, and carrying out similar duties. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2.**

**Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

90.   The Commercial General Liability Policy also contains the following Endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.   The following exclusion is added to Paragraph **2.**, **Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:
**(1)**   A person arising out of any:
* * *
   **(c)**   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;

* * *

This exclusion applies:

&ast; &ast; &ast;

**(2)**   Whether the insured may be liable as an employer or in any other capacity; and

**(3)**   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

&ast; &ast; &ast;

91.   The Commercial General Liability Policy also contains the following Endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MEDICAL TRANSPORT**
**COMMERCIAL GENERAL LIABILITY ENHANCEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

&ast; &ast; &ast;

H.   BROADENED DEFINITION OF INSURED
Section II – Who Is An Insured is amended as follows:

1.   The following is added to Paragraph 2.a.:

Paragraph (1) does not apply to managers at the supervisory level or above.

2.   Paragraph 2. Is amended to include the following as insureds:

Any legally incorporated entity of which you own at least 51% of the voting stock on the inception date of the Coverage Form and on the date of any covered "occurrence",  claim or "suit".

This insurance shall not apply to any entity that is already insured under any other insurance provided by any company or that would be an insured but for the exhaustion of its limits of insurance.

&ast; &ast; &ast;

92.     Jan-Care Raleigh was the employer, co-employer, dual-employer, special employer and/or leasing employer of Brittany Young and Douglas Dick at the time of the accident in question.

93.     Jan-Care Raleigh is named as a Defendant in both the *Young* Case and the *Dick* Case.

94.     There is no coverage under the Commercial General Liability Policy for Jan-Care Raleigh based on Exclusion e. **Employer's Liability,** Exclusion g. **Aircraft, Auto or Watercraft,** Exclusion **Designated Professional Services** Endorsement and Exclusion **Employment-Related Practices** Endorsement.

95.     To the extent that Brittany Young and Douglas Dick are employees of Jan-Care Ambulance Services, Inc., Jan Care Ambulance, Inc. and/or Jan-Care of Nicholas County, Inc. Exclusion **e. Employer's Liability** of the Commercial General Liability Policy would apply to them and there would be no coverage under the Commercial General Liability Policy for them.

96.     Exclusion g. **Aircraft, Auto or Watercraft** would operate to preclude coverage to Jan-Care Ambulance Services, Inc., Jan Care Ambulance, Inc. and/or Jan-Care of Nicholas County, Inc. for any allegations of negligent entrustment of a vehicle.

97.     The **Exclusion Designated Professional Services** Endorsement of the Commercial general Liability Policy would apply to Jan-Care Ambulance Services, Inc., Jan Care Ambulance, Inc. and/or Jan-Care of Nicholas County, Inc. to the extent that any of those entities were engaged in any of the Professional Services set forth in the Schedule of the Endorsement, including the following that are alleged against them in the *Young* Case and the *Dick* Case: dispatching of personnel to provide any of the services listed in the schedule which includes "providing ambulance or medical transportation services" and "establishing medical protocol, creating medical training

curriculum, providing medical training, conducting medical quality assurance programs and carrying out similar duties".

98.     There are allegations made in both the *Young* Case and *Dick* Case relating to Jan-Care Ambulance Services, Inc., Jan Care Ambulance, Inc. and/or Jan-Care of Nicholas County, Inc. that relate to dispatching, training, educating developing safety plans and procedures, failing to develop/design/provide fleet management and driver fatigue plans, training on driver fatigue programs, coercion, reassignment, discipline, harassment and creating a culture of fear and intimidation and/or creating a hostile work environment and others of similar nature set forth the Young Case and the Dick Case that are not specifically set forth in this Declaratory Judgment Complaint but are more fully set forth in **Exhibits A and B attached hereto.**

99.      The allegations made in both the *Young* Case and *Dick* Case relating to Jan-Care Ambulance Services, Inc., Jan Care Ambulance, Inc. and/or Jan-Care of Nicholas County, Inc discussed in paragraph 101 above do not meet the definition of "occurrence" as set forth the Commercial General Liability Policy.

100.     The allegations made in both the *Young* Case and *Dick* Case relating to Jan-Care Ambulance Services, Inc., Jan Care Ambulance, Inc. and/or Jan-Care of Nicholas County, Inc discussed in paragraph 101 above are not covered due to the operation of the **Exclusion Employment-Related Practices** Endorsement would preclude coverage for the allegations.

## COUNT III - EXCESS POLICY

101.   Markel Insurance Company issued Excess Liability Policy Number MTU70002769-05, attached hereto as **Exhibit 3**, with Named Insured Jan-Care Ambulance Services, Inc. and, as per an Endorsement to this policy, named as Additional Insureds, are Jan-Care

Ambulance of Raleigh County, Inc and Jan-Care Ambulance of Nicholas County, Inc.  Said policy does not name as a Named Insured Jan-Care Ambulance, Inc.

102.    Coverage under the Excess Policy to the insured entities is subject to the terms, conditions, provisions and exclusions as set forth the policy.   Said policy provides an Each Occurrence Limit of $2,000,000.00 with a Self-Insured Retention Each Occurrence of $10,000.00.

103.    The Excess Policy, Schedule of Underlying Insurance lists the following:

Commercial General Liability under Markel Insurance Company, policy number MTK70002769-05 with a $1,000,000.00 each Occurrence limit.

Employee Benefits Liability, Markel Insurance Company, policy number MTK70002769-05, on a claims made basis, with a limit of $1,000,000.00 Each Employee and a $2,000,000.00 Aggregate.

Business Automobile Liability, Markel Insurance Company, policy number MTA7002769-05, with a limit of $1,000,000.00.

Professional Liability, Markel Insurance Company, policy number MTK7002769-05, with a limit of $1,000,000.00 each Medical Incident.

Workers Compensation and Employer's Liability, Brickstreet, policy number WCB1019186, which was later replaced by United Wisconsin Insurance Company, policy number WC545-00001-019-SZ, with Bodily Injury limits of $1,000,000.00 by Accident.

104.    The Excess Policy provides in relevant part as follows:

> The coverages referenced in this policy are:
> EXCESS LIABILITY COVERAGE
>
> No obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under:

1.      The insuring agreements to these coverages; or

2.      The Supplementary Payments.

These coverages are subject to exclusions or provisions that restrict coverage. The amount we will pay is limited as described under Section **VI** - Limits of Insurance.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

* * *

Throughout the policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy....

The word "insured" means any person or organization qualifying as such under Section **V – Who Is An Insured.**

* * *

105.    "Section I - Excess Liability Coverage" of the Excess Policy provides as follows:

**SECTION I - EXCESS LIABILITY COVERAGE**

**1.      Insuring Agreement**

We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury", "property damage" and "personal and advertising injury" covered by the "underlying insurance."

Except as specifically provided in this policy, insurance afforded by Excess Liability Coverage is subject to definitions, terms, conditions, exclusions and limitations contained in the "underlying insurance" except any definition, term or condition relating to:

**a.**     Transfer Of Rights Of Recovery Against Others To Us (Subrogation);

**b.**     Other Insurance;

**c.**     Supplementary Payments and obligation to investigate or defend;

**d.**     Amounts of insurance; or

**e.**     Limits Of Insurance.

106.   The Excess Policy contains the following exclusions in **Section IV -**

**Exclusions Applicable To Both Sections I and II**:

> Excess Liability Coverage and Umbrella Coverage do not apply to:

**3.**     **Automobile Coverages**

**a.**     Any loss, cost or expense payable under or resulting from any:

>   **(1)**     First party physical damage coverage;
>
>   **(2)**     No-fault law, personal injury protection or "auto" medical payments coverage;
>
>   **(3)**     Uninsured or underinsured motorist laws; or

**b.**     "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto".

* * *

**6.**     **Employment-Related Practices**

Loss to:

**a.**     A person arising out of any:

>   (1)     Refusal to employ that person;
>
>   (2)     Termination of that person's employment: or
>
>   (3)     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, discrimination or malicious prosecution directed at that person;

This exclusion applies:

>   **(a)**     Whether the injury causing the event described in Paragraphs **a.(1)**, **a.(2)**, or **a.(3)**

above occurs before employment or after employment of that person:

**(b)** Whether the insured may be liable as an employer or in any other capacity; and

**(c)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

\* \* \*

**14.  Punitive Damages**

Punitive damages, exemplary damages, treble damages, or any damages resulting from the multiplication of compensatory damages, including any other fines or penalties. This exclusion does not apply if disallowed by statute.

\* \* \*

107.   The Excess Policy provides as follows with respect to Who Is An Insured:

## SECTION V - WHO IS AN INSURED

**1.**   As respects Excess Liability Coverage:

Any person or organization that is an insured in any "underlying insurance" is an insured except as follows:

No person or organization is an insured with respect to the conduct of any current or past partnership, limited liability company, trust or joint venture that is shown as Named Insured in the Declarations.

\* \* \*

108.   The Excess Policy provides as follows with respect to Limits of Insurance:

## SECTION VI - LIMITS OF INSURANCE

**1.**   The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.**   Insureds;

38

      **b.**     Claims made or "suits" brought or number of vehicles involved; or

      **c.**     Persons or organizations making claims or bringing "suits".

**2.**     The General Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

      **a.**     Coverage **A**, except "ultimate net loss" because of "bodily injury" and "property damage" included in the "products-completed operations hazard"; and

      **b.**     Coverage **A**, except "ultimate net loss" because of "bodily injury" and "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and

      **c.**     Coverage **B.**

* * *

**5.**     Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.**     As respects Excess Liability Coverage:

With respect to "underlying insurance" that provides coverage on the basis other than described in Paragraphs **2.** through **5.** above:

      **a.**     We will pay in the same manner as the applicable "underlying insurance" specifies payment.

      **b.**     Except with respect to any Aggregate Limit, the Each Occurrence Limit in this policy applies in the same manner that the Limit Of Insurance on the "underlying insurance" applies.

     **c.**     If the "underlying insurance" is subject to an Aggregate Limit, the General Aggregate Limit in this policy applies in the same manner that the Aggregate Limit on the "underlying insurance" applies.

This provision applies separately to each coverage listed on the Schedule Of Underlying Insurance.

**7.**     Subject to **4.**, **5.**, or **6.** above, whichever applies, Excess Liability Coverage is excess of an amount not less than the amount shown in the Schedule Of Underlying Insurance for the applicable "underlying insurance", except:

     **a.**     If the Limit of Insurance available to the insured under the applicable "underlying insurance" has been reduced:

          **(1)**     Solely by the payment of claims or "suits"; and

          **(2)**     Subject to the Maintenance Of Underlying Insurance Condition in Section **VII** - Conditions;

          this coverage shall be excess over the reduced Limit of Insurance.

     **b.**     If the Limit Of Insurance available to the insured under the applicable "underlying insurance" has been exhausted;

          **(1)**     Solely by the payment of claims or "suits"; and

          **(2)**     Subject to the Maintenance Of Underlying Insurance Condition in Section **VII** - Conditions;

          this coverage will provide coverage to the extent provided in such "underlying insurance".

Both **a.** and **b.** above only apply until the inception of the next succeeding annual policy period of the "underlying insurance".

8.      Subject to **4.**, **5.**, or **6.** above, whichever applies, if the Limit Of Insurance available to the insured under the applicable "underlying insurance" is higher than the amount shown in the Schedule Of Underlying Insurance, then Excess Liability Coverage is excess of that higher amount.

9.      Subject to **4.**, **5.**, or **6.** whichever applies, Umbrella Liability Coverage is excess of the amount shown in the Declarations for the insured's "self-insured retention", and over any valid and collectible "other insurance" available to the insured.

\* \* \*

The Limits Of Insurance of this policy apply separately to each consecutive annual period...

\* \* \*

109.   The Excess Policy provides as follows in Section VII- Conditions:

**SECTION VII - CONDITIONS**

\* \* \*

5.      **Other Insurance**

a.      This insurance is excess over, and shall not contribute with any of the "other insurance", whether primary, excess, contingent or on any other basis.  This condition will not apply to insurance specifically written as excess over this policy.

When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will entitled to the insured's rights against all other insurers.

**b.**     When this insurance is excess over "other insurance", we will pay only our share of the "ultimate net loss" that exceeds the sum of:

  **(1)**     The total amount that all such "other insurance" would pay for the loss in the absence of the insurance provided under this policy; and

  **(2)**     The total of all deductible and "self-insured retention" amounts under all that "other insurance".

**c.**     If there is any:

  **(1)**     Insurance available to the insured on an extended reporting period basis under either "underlying insurance" or "other insurance"; or

  **(2)**     Insurance available to the insured on a retroactive basis under either "underlying insurance" or "other insurance";

  this policy shall apply as excess of and not contributing with such insurance.

\* \* \*

**8.     Separation Of Insureds**

Except with respect to the Limits Of Insurance, and any rights or duties specifically designed to the first Named Insured, this insurance applies:

**a.**     As if each Named Insured were the only Named Insured; and

**b.**     Separately to each insured against whom a claim is made or a "suit" is brought.

\* \* \*

**12.**  **Loss Payable**

Liability under this policy does not apply to a given claim unless and until:

**a.**  The insured or insured's "underlying insurer" has become obligated to pay the "retained limit"; and

**b.**  The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant and us.

**13.**  **Transfer Of Defense**

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us.  We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

**14.**  **Maintenance Of Underlying Insurance**

The "underlying insurance" and limits listed in the Schedule Of Underlying Insurance in the Declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlements or judgments.

Failure to maintain "underlying insurance" and limits will not invalidate insurance under this policy, but the insurance under this policy will apply as if the "underlying insurance" were in full effect.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect.

\* \* \*

110.  The Excess Policy provides as follows in the Definitions section:

35035/240

43

## SECTION VIII - DEFINITIONS

\* \* \*

2.      "Auto" means:

      **a.**      A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or

      **b.**      Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle law where it is licensed or principally garaged.

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, disability, mental injury, mental anguish, fright or shock resulting from any of these at any time; and care, loss of services or death resulting at any time from the "bodily injury" claimed by any person or organization.

\* \* \*

5.      "Covered auto" means only those "autos" to which "underlying insurance" applies.

6.      "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\* \* \*

11.      "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\* \* \*

14.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15.      "Other insurance" means insurance, other than "underlying insurance" or insurance that is

specifically purchased by the Named Insured to be excess of the insurance afforded by this policy, which is available to the insured for damage to which this policy applies.

\* \* \*

21.   "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

22.   "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance".  The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of the applicable underlying limits.

\* \* \*

24.   "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

25.   "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

26.   "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule Of Underlying Insurance.

27.   "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule Of Underlying Insurance.

\* \* \*

111.    Except as specifically provided in the Excess Policy, insurance afforded by the Excess Liability Coverage is subject to the definitions, terms, conditions, exclusions and limitations contained in the "underlying insurance" except any definition, term or condition relating to transfer of rights of recovery against others, other insurance, supplementary payments and obligations, amounts of insurance or limits of insurance.  If there is no coverage under any of the listed underlying insurance, there is no coverage under the Excess Policy.

112.    The Excess Policy excludes coverage for uninsured and underinsured motorist coverage, as well as bodily injury, arising out of the ownership, maintenance or use of any auto which is not a covered auto.

113.    The Excess Policy does not apply to employment related practices as defined within the Policy as "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, discrimination or malicious prosecution directed to that person."

114.    The Excess policy does not apply if the underlying policies do not cover the loss.

115.    The Excess policy does not provide excess coverage above underinsured motorist coverage.

116.    The Excess policy does not apply to Employment Related Practices as defined in the policy.

117.    The Excess policy does not apply to punitive damages.

## COUNT IV – NO STACKING

118.    While MIC denies that either the Business Auto Policy or the Commercial General Liability Policy applies to this loss, it asserts as follows in the event either the Business Auto Policy or the Commercial General Liability Policy is found to apply to the loss at issue in this case:

119.    The Commercial General Liability Policy contains the following provision:

**Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by use or any company affiliated with us applies to the same "occurrence", the aggregate maximum Limit of Insurance under all such Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.  This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

120.    Based on the above-noted policy language, if coverage under both the Business Auto Policy and the Commercial General Liability Policy is found to apply to the loss that is at issue in this case, then the maximum limit of coverage is $1,000,000.00.

**WHEREFORE,** MIC requests that the Court grant it declaratory judgment as follows:

**I - With respect to the Young Case:**

**Under the Business Auto Policy**

A.    That there is no coverage available to Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Service, Inc., nor Jan-Care Ambulance, Inc. under the MIC Business Auto Policy for the reasons assigned herein;

B.    That since there is no coverage under the MIC Business Auto Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to defend

Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Service, Inc., nor Jan-Care Ambulance, Inc. in the Young Case.

C.      That since there is no coverage under the MIC Business Auto Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to indemnify Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. in the Young Case.

**Under the Commercial General Liability Policy**

D.      That there is no coverage available to Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. under MIC Commercial General Liability policy for the reasons assigned herein;

E.      That since there is no coverage under the MIC Commercial General Liability Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to defend Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. in the Young Case.

F.      That since there is no coverage under the MIC Commercial General Liability Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Service, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to indemnify Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. in the Young Case.

**Under The Excess Policy**

G.     That there is no coverage available to Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. under MIC Excess policy for the reasons assigned herein;

H.     That since there is no coverage under the MIC Commercial General Liability Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to defend Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. in the Young Case, and that, even if there was coverage available under the Excess policy there is no duty for MIC to provide a defense under this policy until the underlying limits of insurance have been used up in the payment of judgments or settlements.

I.     That since there is no coverage under the MIC Excess  Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to indemnify Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Services, Inc., nor Jan-Care Ambulance, Inc. in the Young Case.

**II- With Respect To The Dick Case:**

**Under the Business Auto Policy**

A.     That there is no coverage available to Jan-Care Ambulance of  Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. under MIC Business Auto policy for the reasons assigned herein;

B.     That since there is no coverage under the MIC Business Auto Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to defend Jan-Care Ambulance of Raleigh County, Inc., nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. in the Dick Case.

C.     That since there is no coverage under the MIC Business Auto Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc, nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to indemnify Jan-Care Ambulance of Raleigh County, Inc., nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. in the Dick Case.

**Under The Commercial General Liability Policy**

D.     That there is no coverage available to Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County Inc., nor Jan-Care Ambulance, Inc. under MIC Commercial General Liability policy for the reasons assigned herein;

E.     That since there is no coverage under the MIC Commercial General Liability Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to defend Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. in the Dick Case.

F.     That since there is no coverage under the MIC Commercial General Liability Policy

35035/240

for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to indemnify Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. in the Dick Case.

**Under The Excess Policy**

G.    That there is no coverage available to Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance Nicholas County, Inc., nor Jan-Care Ambulance, Inc. under MIC Excess policy for the reasons assigned herein;

H.    That since there is no coverage under the MIC Excess Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to defend Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. in the Dick Case, and that, even if there was coverage available under the Excess policy there is no duty for MIC to provide a defense under this policy until the underlying limits of insurance have been used up in the payment of judgments or settlements.

I.    That since there is no coverage under the MIC Excess Policy for Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. that this Court declare that there is no duty on MIC to indemnify Jan-Care Ambulance of Raleigh County, Inc, nor Jan-Care Ambulance of Nicholas County, Inc., nor Jan-Care Ambulance, Inc. in the Dick Case.

In the event this Court would rule that both the Business Auto Policy and the Commercial General Liability Policy would apply to the loss that is the subject of this case, MIC would request this Court declare that the most that will apply is $1,000,000.00.

**WHEREFORE**, MIC does pray for such other, further and general relief as the Court would deem required by the facts, the law and the requirements of justice.

**MIC DEMANDS A TRIAL BY JURY AS TO ALL QUESTIONS OF FACT, IF ANY.**

**MARKEL INSURANCE COMPANY**

**By counsel,**

/s/ *Barbara J. Keefer*

Brent K. Kesner (WVSB #2022)
Barbara J. Keefer (WVSB #1979)
**Kesner & Kesner, PLLC**
112 Capitol Street
P. O. Box 2587
Charleston, WV  25329
*Phone:* (304) 345-5200
*Fax:*  (304) 345-5265
bkeefer@kesnerlaw.com